**HOWELLS, INC., a corporation, Plaintiff and Appellant,**

v.

**William NELSON, aka William Lord Associates, Defendant and Respondent.**

**No. 14829.**

Supreme Court of Utah.

June 23, 1977.

---

8. See a comparable case where there was extra exertion, causing unusual strain on the heart, when the deceased was attempting to turn over a dead horse in skinning it, see *Robertson v. Industrial Comm.,* 109 Utah 25, 163 P.2d 331; see also *Powers v. Industrial Comm.,* footnote 6 above; and *Jones v. Calif. Pack. Corp. et al.,* 121 Utah 612, 244 P.2d 640.

9. Sec. 35–1–68, U.C.A.1953.

Dale R. Kent, Salt Lake City, for plaintiff and appellant.

S. Rex Lewis, of Howard, Lewis & Petersen, Provo, for defendant and respondent.

CROCKETT, Justice:

Plaintiff, Howells Inc., sued defendant William Nelson, alleging that he was aka (also known as) William Lord Associates, to recover on a check for $2,164.19 which defendant had delivered to it as payment for merchandise. Upon a trial, the court made findings and judgment in favor of plaintiff and against the William Lord *Corporation* for the amount of the check, interest and costs, totaling $2,852.66, but refused to award attorney's fees as requested by plaintiff.

On appeal the plaintiff contends that the court erred in refusing to find William Nelson *personally* liable, and in failing to award plaintiff attorney's fees.

William Lord Corporation was incorporated by defendant and others in February of 1974. Defendant is also a director of the corporation. On February 5, 1976, he gave plaintiff a check for $2,164.19 to be applied upon an account for which the plaintiff had furnished merchandise, which account was carried in plaintiff's records in the name of "William Lord *Associates*"; and plaintiff's position stated in its brief is that "the check was drawn on an account entitled 'William Lord Associates,' and was signed by William Nelson." It is not disputed that when he gave the check to plaintiff's manager he told her that there was not money in the bank to cover the check then, and asked her to hold it for two weeks, to which she agreed. Three weeks later on February 26, 1976, it was presented to the bank, but was dishonored; and similarly on March 2, 1976, whereupon this suit was filed.

Plaintiff argues that defendant should be held personally liable since William Lord Associates was not an entity incorporated under Utah law. However, the trial court found that:

"William Lord Corporation is a duly registered Utah corporation and William Lord Associates was intended by defendant to be an assumed name for William Lord Corporation."

■ It was upon the basis of what has been said above that the court entered judgment against said William Lord *Corporation.* In regard to plaintiff's argument that personal liability should have been fixed upon defendant William Nelson, it is to be had in mind that it was the plaintiff's burden to so prove. It is significant that the account in question was carried on plaintiff's books in the name of "William Lord *Associates*"; and that according to plaintiff's own contention the check was drawn on an account so entitled. It is also to be noted particularly that this check did not purport to indicate that William Nelson was signing for a corporation; and that the debt being negotiated about was not one which was "incurred or arising"[1] from that transaction, but related to a prior existing debt. To be considered in connection with the foregoing is the fact that as a general rule, where it appears from the check that a party signs in a representative capacity he does not become personally liable.[2] We do not see the evidence here as compelling a finding in plaintiff's favor on that issue.

■ Plaintiff also urges that the defendant should be held personally liable because his issuance of this check was a fraud upon the plaintiff. We have no disagreement with the rule advocated that if an officer of a corporation, even though he purports to be acting for it, commits a fraud upon another, he may be held personally liable therefor.[3] However, in this situation, there are two propositions against finding any fraud upon the plaintiff. The first is that the check was given to pay on a past due account. Therefore, the plaintiff was not induced to give anything of value, nor was it in any way cheated or adversely affected by the giving of the check.[4] As a matter of fact, it could be regarded as having improved the plaintiff's position by raising the form of the obligation one step in dignity as plaintiff would then have its choice of suing on the check, or on the account. The second is the agreement to hold the check for two weeks. The law is that where the maker and payee are aware that there are not funds presently available to pay a check and it is therefore post-dated, or agreed to be held, it does not come within the definition of a check, which must

1. See Sec. 16–10–139, U.C.A.1953.

2. *Kitchell Corp. v. Hermansen,* 8 Ariz.App. 424, 446 P.2d 934, *Rene Boas & Associates v. Vernier,* 22 A.D.2d 561, 257 N.Y.S.2d 487; 10 C.J.S. Bills and Notes § 32.

3. *Klockner v. Keser,* 29 Colo.App. 476, 488 P.2d 1135.

4. See elements of fraud, *Stuck v. Delta Land & Water Co.,* 63 Utah 495, 227 P. 791.

be payable on demand, but is properly regarded as a promise to pay in the future.[5]

 What has just been said above applies to plaintiff's contention that it should have been awarded attorney's fees under Sec. 7–15–1(2), which provides:

> In such civil action (against the person issuing a fraudulent check) the person making . . . the check . . . shall be liable to the holder of it for the amount thereon, for interest and all costs of collection, including all court costs and reasonable attorney's fees.

It will be noted that the attorney's fees so provided for applies in cases of the issuance of a check where there is fraud involved; and for the reasons explained above is not applicable here.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

**5.** *State v. Bruce*, 1 Utah 2d 136, 262 P.2d 960; *State v. Turetsky*, 78 N.J.Super. 203, 188 A.2d 198; *People v. Vida*, 2 Mich.App. 409, 140 N.W.2d 559.